**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| RAFAEL ENRIQUEZ, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. H-08-3466 |
| | § | |
| CITY OF HOUSTON, | § | |
| | § | |
| Defendant. | § | |

## MEMORANDUM AND ORDER

This is an employment discrimination case. Rafael Enriquez alleges that the City of Houston Municipal Courts Administration Department terminated his employment because of discrimination based on his sex and in retaliation for his complaints about inappropriate remarks. The City has moved for summary judgment. (Docket Entry No. 36). Enriquez has responded, arguing that he has shown genuine issues of material fact as to both discrimination and retaliation. (Docket Entry No. 48).

Based on the motion and response, the record, and the applicable law, this court grants the City's motion for summary judgment. Final judgment is entered by separate order. The reasons are explained below.

**I.     Background**

Beginning on April 7, 2008, Rafael Enriquez worked as a Customer Service Representative in the City of Houston Municipal Courts Administration Department ("MCAD"). Consistent with written City policy, Enriquez began as a probationary employee subject to termination without right of appeal.

A Customer Service Representative provides clerical services and communicates with judges, attorneys, litigants, and public officials to provide information about court procedures and policies. (Docket Entry No. 36, Ex. 2). These duties are performed in a courtroom and in a customer service area. The City required Enriquez to attend training sessions and engage in some on-the-job training, including courtroom observation time. Enriquez was also allowed to perform some of the job tasks before his training was complete, with supervision.

On May 1, 2008, Howard LaFleur, an MCAD training official, sent an e-mail to Karen Fields, one of the MCAD managers who had hired Enriquez. LaFleur stated that Enriquez "seemed to be lost most of the time simply taking longer than anyone else learning the material." (*Id.*, Ex. 5). He also wrote: "Rafael claims to have gained a vast knowledge of the legal field from various jobs with law firms, but it was not demonstrated to me while we were in training. Rafael had no prior experience with the courtroom or any of the simple meanings one might know from years as he put it working with lawyers and law firms. He was below adequate at navigating the computer, with such simple instructions as log on and create a password." (*Id.*). LaFleur also expressed concern about Enriquez's poor performance on quizzes, called "scenarios," offered as part of the training course. (*Id.*). LaFleur stated that Enriquez was not as prepared for the on-the-job training phase as the other employees hired at the same time. As a result, LaFleur did "not feel comfortable with [Enriquez] on the system or the bench at this point." (*Id.*). LaFleur concluded that he was uncertain whether additional training would resolve Enriquez's issues. LaFleur noted that as a practical matter, no training class space was available during the month of May and that highly supervised one-on-one training might be an alternative. (*Id.*).

LaFleur was not the first or the only supervisor concerned about Enriquez's performance. On April 25, 2008, Lisa Wormley, one of Enriquez's supervisors, completed a Performance Discussion Worksheet. She noted three incidents that took place on April 15, 2008. She described the incidents as follows:

> (1) When Judge Fraga was on the bench, talking to a defendant in Spanish, [Enriquez] interrupted Judge Fraga on how to say a word correctly in Spanish. The Judge ignored Rafael, but [] the Bailiff pull[ed Enriquez] to the side, explaining to Rafael to never interrupt Judge.
>
> (2) Speaking Spanish giving incorrect information to citizen, without getting information from season[ed] clerks.
>
> (3) Interrupting clerks while talking to defendant. Rafael started talking to defendant when clerk was explaining paperwork to defendant and parent.

(*Id.*, Ex. 7). As to the second incident, an MCAD employee named Maria Palomo signed a written statement on May 2, 2008, confirming that Enriquez had provided incorrect information to a litigant, which Palomo later corrected. The clerk assigned to supervise Enriquez did not speak Spanish and did not notice his mistake. (*Id.*, Ex. 19).

MCAD personnel were also concerned that Enriquez had misrepresented his qualifications in his job application. Enriquez stated in the "Certificates and Licenses" section of his job application that he had a certificate or license as an "Advanced Lawyer's Assistant: Legal Education" issued by the Houston Chapter of the National Association of Legal Secretaries. (*Id.*, Ex. 8). On April 25, 2008, Rebekah Peterson, an MCAD Human Resources Assistant, e-mailed Diana Price, who worked with the National Association of Legal Secretaries. Peterson wrote: "Pursuant to our phone conversation, please verify that Rafael Enriquez, Jr. hold [sic] a PLS [Professional Legal Secretary] Certification." (*Id.*, Ex. 9). Price responded, stating that she had

"checked my records and I have no information on a Rafael Enriquez, Jr. as ever receiving a PLS certification." (*Id.*). Enriquez does not dispute his lack of a PSL certification. He responds that he had received a Certificate of Attendance from the Houston Association of Legal Secretaries on April 9, 1990 for a 33-hour "legal education seminar or workshop," the "NALS Official Course for the Legal Secretary." (Docket Entry No. 48-1 at 1). MCAD personnel also noted that Enriquez had omitted from his application a one-week period of employment with Sunland Engineering.

On May 19, 2008, Sahira J. Abdool, the Director and Chief Clerk of MCAD, sent a letter to Enriquez, terminating his employment. The letter stated:

> This notice is to inform you that your employment with the City of Houston's Municipal Courts Administration Department is being terminated effective May 19, 2008. It is unfortunate that since your employment with us, you have given us cause for considerable concern about your forthrightness, trustworthiness and judgment in this crucial position. More specifically, you did not provide thorough or accurate information when you submitted your employment application. It appears deceptive about your previous work experience and upon further review, you omitted pertinent information.
>
> Shortly after you started, you interfered with the judicial process in the courtroom to which you were assigned. You have demonstrated a lack of good judgment and appropriate social skills, as to when and how to deal with providing information to citizens to the degree that we are not confident that you could work unsupervised in a courtroom. Even after receiving instruction, training and working closely with a supervisor/trainer, you demonstrated difficulty comprehending the courtroom process. Your performance to date gives us no assurance that you can and will be a productive employee in the department, now or in the future. Therefore, I am terminating your employment at the close of business on the 19th day of May, 2008.
>
> . . . . You will not be eligible for rehire since this termination is for cause and misconduct. . . . .

> We regret that this action has become necessary and want to advise you that as a probationary employee, you are not civil service protected and have no right of appeal of this decision. Consequently, this decision becomes final at the close of business on the 19th of May, 2008.

(Docket Entry No. 36, Ex 3). Enriquez was given this letter during an exit interview on May 19, 2008. He signed the letter to certify that he had received a copy. (*Id.*).

During the approximately six weeks Enriquez was employed by MCAD, he witnessed three incidents that he felt were inappropriate. The first occurred in the parking lot outside of the courthouse. Enriquez walked by a female clerk and another woman whom Enriquez could not identify. He said goodnight to both. He heard the clerk say to the other woman, "Oh, he is just a cupcake." (*Id.*, Ex. 15, Enriquez Depo. at 80:14-81:4). The second incident occurred in a break room at the courthouse. Enriquez was sitting with three or four women who were also newly hired Customer Service Representatives. The women were talking about their reaction to some of the people and incidents they had observed in court. A female security guard said, according to Enriquez, "Girls, you-all ain't seen nothing yet. They sent me to go in a courtroom once and arrest a man for jacking off." (*Id.* at 58:2-59:7). The third incident occurred while Enriquez was working in the courtroom. He heard a person coming into the room say, "'He is just a gay man' and something to the effect that he enjoys jacking off." (*Id.* at 70:9-13). Enriquez believes that Vicki Walker, one of his supervisors, made the statement, although he did not see her do so. Enriquez stated in his response to the summary judgment motion that Walker called him a "gay old man." (Docket Entry No. 48 at 8). In the response, Enriquez also referred to a fourth incident in which LaFleur said that Enriquez was "just an old confirmed bachelor" like LaFleur. (*Id.*). There is no evidence of this incident in the record.

Enriquez reported the parking lot incident in an anonymous employee survey MCAD received on May 9, 2008. In the survey response, Enriquez answered "no" to questions asking whether he had experienced discrimination from his supervisor on the bases of age, disability, gender, racial/ethnic background, or religion. In answer to questions about discrimination on the bases of marital status and sexual orientation, Enriquez stated:

> While leaving one night, a group of ladies huddling out in parking lot perhaps thinking harmlessly, uttered "He's a cupcake." Would they like it if I said such to one of them? I waited 4 hrs to pay my respects in attempting to enter church of the late Honorable Senator Barbara Jordan for her memorial service, but was prevented entry by turnout of dignitaries from both Hollywood & D.C. 'Orientation' is personal. All should be respected. Witness the tragedy of hate crime Matthew Shepard.

(*Id.*, Ex. 18 at 3). Enriquez's name was not on the survey response. The identifying information provided on the form was that the person completing it was Hispanic, male, 51 years old or older, a college graduate, with 0-4 years of experience at MCAD, and working in the "Court Ops" division.

Enriquez testified in his deposition that he reported the security guard's break room statement — "Girls, you-all ain't seen nothing yet. They sent me to go in a courtroom once and arrest a man for jacking off" — to Kenneth Flowers, who was running a training session. Enriquez testified that during the session, he raised his hand and "said there was an incident recently where someone displayed a very uncomfortable hostile demeanor and made it very uncomfortable and disclosed an incident of public indecency but she did not leave it at that, she chose to get graphic and take us down stairs where we didn't have to go." (*Id.*, Ex. 15, Enriquez Depo at 66:21-67:15). Other than the survey and this comment to Flowers, Enriquez did not report any alleged discrimination or harassment to anyone during his employment with MCAD.

After Enriquez's employment was terminated, he complained to the City's Office of Inspector General. Enriquez complained of wrongful termination and sexual harassment. On August 5, 2008, the Inspector General sent Enriquez a letter informing him that his office had concluded its investigation and determined that his complaints had been classified as "unfounded." (*Id.*, Ex. 12). On August 18, 2008, Enriquez filed a Charge of Discrimination with the EEOC, alleging sex discrimination and retaliation. (*Id.*, Ex. 13). On August 29, 2008, the EEOC issued a right-to-sue letter, stating that, "[b]ased upon its investigation, the EEOC is unable to conclude that the information obtained establishes violations of the statutes." (*Id.*, Ex.14).

Enriquez filed suit on November 11, 2008. (Docket Entry No. 1). After this court denied the City's motion to dismiss based on administrative exhaustion, (Docket Entry No. 10), the City answered the complaint, (Docket Entry No. 16), and the parties engaged in discovery. On January 15, 2010, the City moved for summary judgment, arguing that Enriquez had not made a prima facie case of discrimination or retaliation or raised a fact issue as to pretext. (Docket Entry No. 36). Enriquez responded. (Docket Entry No. 48). The motion and response are analyzed below.

**II.     The Legal Standard**

Summary judgment is appropriate if no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c). "The movant bears the burden of identifying those portions of the record it believes demonstrate the absence of a genuine issue of material fact." *Triple Tee Golf, Inc. v. Nike, Inc.*, 485 F.3d 253, 261 (5th Cir. 2007) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–25 (1986)). If the burden of proof at trial lies with the nonmoving party, the movant may satisfy its initial burden by " 'showing'-that is, pointing out to the district court-that there is an absence of evidence to support the nonmoving party's case." *See*

*Celotex*, 477 U.S. at 325. While the party moving for summary judgment must demonstrate the absence of a genuine issue of material fact, it does not need to negate the elements of the nonmovant's case. *Boudreaux v. Swift Transp. Co.*, 402 F.3d 536, 540 (5th Cir. 2005) (citation omitted). "A fact is 'material' if its resolution in favor of one party might affect the outcome of the lawsuit under governing law." *Sossamon v. Lone Star State of Texas*, 560 F.3d 316, 326 (5th Cir. 2009) (quotation omitted). "If the moving party fails to meet [its] initial burden, the motion [for summary judgment] must be denied, regardless of the nonmovant's response." *United States v. $92,203.00 in U.S. Currency*, 537 F.3d 504, 507 (5th Cir. 2008) (quoting *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc)).

When the moving party has met its Rule 56(c) burden, the nonmoving party cannot survive a summary judgment motion by resting on the mere allegations of its pleadings. The nonmovant must identify specific evidence in the record and articulate how that evidence supports that party's claim. *Baranowski v. Hart*, 486 F .3d 112, 119 (5th Cir. 2007). "This burden will not be satisfied by 'some metaphysical doubt as to the material facts, by conclusory allegations, by unsubstantiated assertions, or by only a scintilla of evidence.'" *Boudreaux*, 402 F.3d at 540 (quoting *Little*, 37 F.3d at 1075). In deciding a summary judgment motion, the court draws all reasonable inferences in the light most favorable to the nonmoving party. *Connors v. Graves*, 538 F.3d 373, 376 (5th Cir. 2008).

The moving party bears a heavier burden when seeking summary judgment on a claim or defense on which it would bear the burden of proof at trial. *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986). "Thus, if the movant bears the burden of proof on an issue, either because he is the plaintiff or as a defendant he is asserting an affirmative defense, he must establish beyond peradventure all of the essential elements of the claim or defense to warrant judgment in his favor."

*Id.*; *see also Meecorp Capital Markets LLC v. Tex-Wave Industries LP*, 265 Fed. App'x 155, 157 (5th Cir. 2008) (per curiam) (unpublished) (quoting *Fontenot*).

**III.   Analysis**

    **A.   Sex Discrimination**

Title VII of the Civil Rights Act of 1964 prohibits discrimination by employers "against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a). Discrimination can be proven by either direct or circumstantial evidence. *Russell v. McKinney Hosp. Venture,* 235 F.3d 219, 222 (5th Cir. 2000). Evidence is "direct" if it would prove the fact in question without inference or presumption. *Fabela v. Socorro Indep. Sch. Dist.,* 329 F.3d 409, 415 (5th Cir. 2003) (citations omitted). If no direct evidence exists, the court *McDonnell Dougla*s burden-shifting framework. *See McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802, 93 S. Ct. 1817. Under *McDonnell Douglas,* a plaintiff alleging discrimination must first make a *prima facie* showing that: (1) he is a member of a protected class; (2) he was qualified for the position; (3) an adverse employment action was taken; and (3) others similarly situated – but outside the protected group – were treated more favorably. *See id.*; *Septimus v. Univ. of Houston,* 399 F.3d 601, 609 (5th Cir. 2005). If the plaintiff makes the *prima facie* showing, the burden shifts to the defendant to articulate some legitimate, nondiscriminatory reason for the challenged action. *McDonnell Douglas,* 411 U.S. at 802, 93 S. Ct. 1817.

If the defendant meets this burden, the plaintiff must then create a genuine issue of material fact that: (1) the defendant's reason is not true, but is instead a pretext for discrimination; or (2) the defendant's reason, while true, is only one of the reasons for its conduct and that discrimination was

a motivating factor in the defendant's decision. *See Rachid v. Jack in the Box, Inc.,* 376 F.3d 305, 312 (5th Cir. 2004); *see generally, Crawford v. U.S. Dept. of Homeland §.*, 245 Fed.App'x 369, 377-378 (5th Cir. 2007). The pretext element can be satisfied by evidence showing that the City's proffered reason is not worthy of credence, or that some other reason is more likely. *See Reeves*, 530 U.S. at 146-48, 120 S.Ct. 2097. In a mixed-motive case, if the plaintiff shows that the illegal discrimination was a motivating factor, the defendant must respond with evidence that the same employment decision would have been made regardless of discriminatory animus. *Rachid*, 376 F.3d at 312.

In this case, there is no direct evidence of discrimination. The *McDonnell Douglas* test applies. The City has not disputed that an adverse employment action, termination, was taken against Enriquez. It has also conceded that Enriquez had the minimum qualifications for his job. The City has contested the other two elements of the *prima facie* case, arguing that Enriquez did not belong to a protected group and that there is no evidence of similarly situated individuals outside of his group who were treated more favorably. Although Enriquez cites incidents that he asserts show discrimination based on sexual orientation, this is not a protected classification under Title VII. *See Dawson v. Bumble & Bumble*, 398 F.3d 211, 218 (2nd Cir. 2005); *Blum v. Gulf Oil Corp.*, 597 F.2d 936, 938 (5th Cir. 1979).

Enriquez argues that he was a member of a protected class because of his age. This court has already denied Enriquez's motion for leave to amend his complaint to add an age discrimination claim. (Docket Entry No. 49).

The only basis on which Enriquez can make out a *prima facie* case is on a theory of discrimination against him because he is male. Assuming that the evidence in the record is sufficient

10

to pass the relatively low bar of the *prima facie* case, the City has responded with legitimate, nondiscriminatory reasons for terminating Enriquez's employment.  Specifically, the City cites Enriquez's inappropriate behavior of interrupting a judge during court proceedings, his providing incorrect information to citizens, his poor performance in training, his overstatement of his credentials as a legal secretary on his job application, and his failure to include a prior employer on the application.  These were the reasons Abdool listed in her letter terminating Enriquez's employment.  The City has met its burden of showing legitimate, nondiscriminatory reasons for termination, shifting the burden back to Enriquez to raise a fact issue as to whether those reasons are pretexts for discrimination.  *Septimus*, 399 F.3d at 607; *Pineda v. United Parcel Serv.*, *Inc.*, 360 F.3d 483, 487 (5th Cir. 2004).  Enriquez can meet this burden "by producing circumstantial evidence sufficient to create a fact issue as to whether the employer's nondiscriminatory reasons are merely pretext for discrimination."  *Machinchick v. PB Power, Inc.*, 398 F.3d 345, 356 (5th Cir. 2005).  The United States Supreme Court, in *Reeves v. Sanderson Plumbing Products*, stated that "the trier of fact may still consider the evidence establishing the plaintiff's prima facie case 'and inferences properly drawn therefrom . . . on the issue of whether the defendant's explanation is pretextual."  530 U.S. 133, 143, 120 S.Ct. 2097 (2000).  A plaintiff may show pretext by demonstrating that the proffered reasons for the challenged employment action are false or "unworthy of credence." *Laxton v. Gap Inc*., 333 F.3d 572, 578 (5th Cir. 2003); *Gee v. Principi*, 289 F.3d 342, 347–48 (5th Cir. 2002) (an employer's inconsistent explanations for its employment decisions at different times permits a jury to infer that the employer's proffered reasons are pretextual).  If the plaintiff can identify evidence that the proffered explanation is merely pretextual, that will usually be sufficient

to survive summary judgment. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. at 146-48, 120 S.Ct. 2097.

The comments that Enriquez heard in the parking lot, the break room, and the courtroom are not evidence of sex-based animus. The statement in the parking lot to a "cupcake" apparently refers to sexual orientation or failure to conform to gender norms and was made by other clerks, not supervisors or anyone involved in the decision to fire Enriquez. The statement is not evidence that the City terminated Enriquez because he was a man rather than a woman. Enriquez heard someone say something about a "gay man"; such a comment is not actionable. The security guard's comment in the break room about finding a person masturbating in the courtroom is not evidence of pretext and does not relate to Enriquez's sex. The comment was offensive to Enriquez but does not support an inference that he was fired because of discrimination against him because he is male.

Most of Enriquez's response is directed towards disputing that he lied on his employment application and that his behavior did not warrant termination. In a case involving allegedly discriminatory discharge, however, a plaintiff's subjective belief that he did not engage in wrongdoing is not sufficient. The issue is whether the undisputed facts show, as a matter of law, that the employer had a good-faith reasonable basis for the discharge. "Simply disputing the underlying facts of an employer's decision is not sufficient to create an issue of pretext." *LeMaire v. La. Dep't of Transp. & Dev.*, 480 F.3d 383, 391 (5th Cir. 2007); *see also Mire v. Texas Plumbing Supply Co., Inc.*, 286 F. App'x 138, 143–44 (5th Cir. 2008) (unpublished) (per curiam) (holding that the plaintiff's subjective belief that she was right and defendant was wrong, without more, was insufficient to rebut defendant's reasons for the disciplinary action); *Bryant v. Compass Group USA, Inc.*, 413 F.3d 471, 478 (5th Cir. 2005) (stating that the fact that an employer's investigation reaches

the wrong conclusion does not show an improper motivation); *Cervantez v. KMGP Services Co., Inc.*, No. 08-11196, Slip Op. at 8-9 (5th Cir. Sep. 16, 2009) (unpublished) (per curiam) ("[A] fired employee's actual innocence of his employer's proffered accusation is irrelevant as long as the employer reasonably believed it and acted in good faith.").

There is no evidence in the record suggesting that the City did not honestly believe its reasons for terminating Enriquez's employment. The record shows that the City investigated the information on Enriquez's employment application and had ample documentation of Enriquez's deficient job performance and his failure to possess or learn the necessary skills and information. In the absence of any circumstantial evidence of sex-based motives, Enriquez has failed to meet his burden of creating a fact issue on his sex discrimination claim. Summary judgment is granted on this claim.

**B.     Retaliation**

Enriquez's second claim is that the City fired him because he reported instances of harassment he experienced on the job.[1] The *McDonnell Douglas* burden-shifting framework also applies to retaliation claims. *See Mota v. Univ. of Texas Houston Health Science Center*, 261 F.3d 512, 519-20 (5th Cir. 2001); *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). If a plaintiff makes a *prima facie* showing, the burden shifts to the

---

[1] Enriquez has not asserted a separate claim based on a hostile work environment. The *prima facie* elements of a hostile work environment claim are that: (1) the plaintiff belongs to a protected group; (2) was subjected to unwelcome harassment; (3) the harassment complained of was based on membership in the protected group; (4) the harassment affected a term, condition, or privilege of employment; and (5) the defendant knew or should have known of the harassment, yet failed to take prompt remedial action. *Felton v. Polles,* 315 F.3d 470, 484 (5th Cir. 2002). The burden shifts on the fifth element when the harassment is by a supervisor. *See Faragher v. City of Boca Raton,* 524 U.S. 775, 807, 118 S.Ct. 2275, 141 L.Ed.2d 662 (1998). Based on the present record, a hostile work environment claim by Enriquez would not be successful because none of the allegedly harassing comments were based on Enriquez's sex.

defendant to proffer a legitimate rationale for the underlying employment action. The burden then shifts back to the plaintiff to demonstrate that the employer's articulated reason for the employment action was a pretext for retaliation. *Mota*, 261 F.3d at 519-20. The elements of a *prima facie* retaliation claim are that: (1) the plaintiff engaged in an activity protected by the statute; (2) an adverse employment action occurred; and (3) a causal link exists between the protected activity and the adverse employment action. *McCoy v. City of Shreveport*, 492 F.3d 551, 556-57 (5th Cir. 2007). Title VII's antiretaliation provision encompasses two broad types of protected activity, making it "an unlawful employment practice for an employer to discriminate against any of his employees . . . [1] because he has opposed any practice made an unlawful employment practice by this subchapter, or [2] because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter." 42 U.S.C. § 2000e-3(a).

Job termination is clearly an adverse employment action. The City contests the other two elements of the *prima facie* case. Enriquez asserts that his written complaint about the parking lot incident on his employment survey and his verbal complaint about the security guard's comment in the break room were "protected activity." The EEOC charge and complaint to the Inspector General were made after Enriquez's employment was terminated, so they are not relevant. Enriquez testified in his deposition that, in making the verbal complaint, he said that "there was an incident recently where someone displayed a very uncomfortable hostile demeanor and made it very uncomfortable and disclosed an incident of public indecency but she did not leave it at that, she chose to get graphic and got dark and too us down stairs where we didn't have to go." (Docket Entry No. 36, Ex. 15, Enriquez Depo. at 67:7-15). There is no evidence in the record that Enriquez made any other reports. The statements Enriquez complained in his anonymous survey

14

response and the verbal complaint in the training session were statements that did not violate Title VII. The Fifth Circuit has made it clear that a retaliation claim requires "at least a reasonable belief" that the practices the plaintiff opposed or complained about were unlawful under Title VII. *See Long v. Eastfield Coll.*, 88 F.3d 300, 304 (5th Cir. 1996); *Mota v. Univ. of Tex. Houston Health Sci. Ctr.*, 261 F.3d 512, 519 (5th Cir. 2001); *see also Bd. of County Comm'rs, Fremont County, Colo. v. EEOC*, 405 F.3d 840, 852 (10th Cir.2005) ("Thus, the issue is not [the plaintiff's] subjective reasons for filing his original complaint of 'third-party sexual harassment' with the EEOC, but rather, whether he had a good faith belief that the conduct complained of violated Title VII."); *Weeks v. Harden Mfg. Corp.*, 291 F.3d 1307, 1312 (11th Cir.2002) ("A plaintiff must not only show that he subjectively (that is, in good faith) believed that his employer was engaged in unlawful employment practices, but also that his belief was objectively reasonable in light of the fact and record presented.") (quoting *Little v. United Tech., Carrier Transicold Div.*, 103 F.3d 956, 960 (11th Cir.1997) (emphasis in original)). Even assuming that Enriquez believed in good faith that these comments constituted harassment because of sex, that belief was not reasonable. *Hamner v. St. Vincent Hosp. & Health Care Center, Inc.*, 224 F.3d 701, 707 (7th Cir. 2001) ("Here, the record only supports the conclusion that Edwards's harassment of Hamner was based on Hamner's homosexuality, and thus no reasonable jury could find that Hamner reasonably believed that his grievance was directed at an unlawful employment practice under Title VII.").

Because Enriquez has not created a fact issue as to whether he engaged in protected activity, he has not made out his *prima facie* case. Even if he had done so, his retaliation claim would not survive summary judgment. The City has, as explained above, offered legitimate, nonretaliatory reasons for terminating Enriquez's employment. The City fired him because he performed poorly

15

on the job and was not truthful in his job application. Enriquez's disagreement with the factual basis for those reasons is not sufficient to create a factual dispute as to whether those reasons are pretextual. *LeMaire*, 480 F.3d at 391. And Enriquez has not provided any other evidence of pretext. Indeed, the record does not even show whether anyone in a decision-making capacity knew that Enriquez had complained. The evidence is that no one at MCAD knew that Enriquez made any written or verbal complaint. His survey response was anonymous. His verbal complaint was made to a man teaching his training course, not to any supervisor. There is no evidence that the complaint to the teacher was ever relayed to a supervisor or anyone involved in the decision to fire Enriquez..\ Enriquez has not shown a genuine issue of material fact as to whether his employment would not have been terminated but for his engaging in protected activity.

**IV.    Conclusion**

The City's motion for summary judgment is granted. Final judgment is entered by separate order.

SIGNED on April 20, 2010, at Houston, Texas.

_____
Lee H. Rosenthal
United States District Judge